UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------------------- X
HOWARD RUBINSKY,                                  :
                                                  :
                                                  :   Case No.: 2:14-cv-01540
                    Plaintiff,                    :
                                                  :
        -against-                                 :
                                                  :
AHMED ZAYAT, a/k/a                                :
EPHRAIM ZAYAT,                                    :
                    Defendant.                    :
---------------------------------------------------------------------- X

### PLAINTIFF'S RESPONSE TO DEFENDANT'S L.CIV.R. 56.1 STATEMENT OF MATERIAL FACTS NOT IN DISPUTE AND SUPPLEMENTAL STATEMENT OF MATERIAL FACTS THAT PLAINTIFF CONTENDS ARE NOT IN DISPUTE

1.   Plaintiff Howard Rubinsky is a Florida resident and has lived there since 2001. (Rubinsky Tr. at 4:13-14, 9:16-18, 14:25-15:2.) **Admitted.**

2.   Rubinsky is currently unemployed, but was previously "involved in gambling." (Rubinsky Tr. at 14:25-15:14.) **Admitted.**

3.   Ahmed Zayat is a New Jersey resident and a citizen of both the United States and Egypt. (Zayat Decl. ¶ 2.) **Admitted.**

4.   From 1997 to 2005, Zayat was executive chairman of Al Ahram Beverages, a privatized Egyptian beverage company. During this time, Zayat lived in Egypt during the week and commuted to New Jersey, where his wife and four children lived, on the weekends. (*Id.* ¶ 4.) **Denied, but Plaintiff admits that on a regular basis Defendant left Cairo Thursday evening; arrived in New York approximately 6:00 A.M. on Friday; returned to Cairo at approximately 11:00 A.M. on Sunday; and without exception observed Shabbat, which**

**meant that between a few minutes before sunset on Friday until the appearance of three stars in the sky on Saturday night he exercised his freedom from the regular labors of everyday life and took this extended period of time to contemplate the spiritual aspects of life and to spend time with his family. Zayat Transcript. 24:16-25:9.**

5. In 2005, Zayat moved back to the United States on a full-time basis and founded Zayat Stables, LLC ("Zayat Stables"), a company that purchases, trains, and races thoroughbred horses. (*Id.* ¶ 5.) **Admitted.**

6. Zayat never asked Rubinsky to put up a line of credit for him at any gambling venue, including Pinnacle and Tradewinds. (Rubinsky Tr. at 50:7-16, 55:1-4; Zayat Decl. ¶ 10.) **Admitted.**

7. The first time Rubinsky ever met or spoke to Zayat was after the alleged debt that is the subject matter of this lawsuit was allegedly incurred. (Rubinsky Tr. at 24:16-25:7.) **Denied. The first time Rubinsky spoke with Zayat, Zayat's debt to Tradewinds was not yet in default and Zayat undertook to pay it over time. Rubinsky Tr. At 29:15-18 ("He said I will pay the debt. I need some time, I will pay the debt.")**

8. Rubinsky does not have any documentation, first-hand knowledge or any witness with first-hand knowledge, to show that Zayat actually placed bets through Tradewinds. (Rubinsky Tr. at 76:20-25; 52:23-53:20.) **Denied. In 2003 Defendant admitted he had incurred the debt to Tradewinds and undertook to repay it. (Rubinsky Tr. At 29:15-18; 73:6-76:3).**

9. Rubinsky does not have any documentation, first-hand knowledge, or witness with first-hand knowledge, to show that Zayat made $300,000 worth of payments to Tradewinds as payment on an alleged debt. (Rubinsky Tr. at 56:21-59:14, 79:14-20; 81:14-82:4.) **Denied.**

**Rubinsky knows that at the time of his first conversations with Tradewinds and Defendant that Defendant's obligations to Tradewinds slightly exceeded $2.1 Million and at the time Tradewinds held Plaintiff accountable for Defendant's debt it had been reduced to $1.65 Million.**

10. Rubinsky primarily made his living from commissions he received from Tradewinds and the International Racing Group ("IRG"). (Rubinsky Tr. at 60:24-65:25.) He earned his commission from Tradewinds by purchasing a "player list" of sports betters from all over the world. (*Id.*) Plaintiff provided the list to Tradewinds free of cost, which in turn marketed its facility to these prospective gamblers. (*Id.*) The list primarily consisted of people who gambled between $500 and $2,000 and had to "post up" the money before they bet so there was no risk of non-payment if they lost. (*Id.*) Tradewinds would then pay Plaintiff a commission of up to forty percent on the losses of people who were on his player list. (*Id.*) Plaintiff did not have a written contract with Tradewinds—"everything was verbally done." (*Id.* at 72:6-9.) **Admitted.**

11. The debt that is the subject matter of this lawsuit was allegedly incurred in early 2003. (Rubinsky Tr. at 46:8-23, 52:4-54:11.) In May 2005, Rubinsky hired a lawyer and investigator to pursue recovery of the alleged debt from Zayat. (Rubinsky Tr. at 118:8-137:4; Wagner Decl. Ex. D.) **Denied. The debt that is the subject matter of this action arises from the written promise of Defendant to Plaintiff embodied in an exchange of text messages on the morning of April 6, 2008. Transcript of Texts 24:11-25:15.**

12. This lawsuit was not filed until March 11, 2014. (Wagner Decl. ¶ 2 & Ex. A.) **Admitted.**

13. Rubinsky has two gambling related felony convictions. (Rubinsky Tr. at 159:17-18.): one from 1993 for aiding and abetting a bookmaker in Nevada, and one from October 2008 where Rubinsky pled guilty to Interstate Transmission of Wagering Information and Money Laundering. (*Id.* at 159:8-163:08; Wagner Decl. Exs. E, F.) **Admitted.**

### Additional Facts That Defendant Contends Are Undisputed

14. Zayat sent to Rubinsky each of the text messages set forth in the transcript annexed to the Bainton Declaration as Exhibit C.

15. Rubinsky sent to Zayat each of the text messages set forth in the transcript annexed to the Bainton declaration as Exhibit except for those identified as being sent by "Hoagie."

16. "Hoagie" sent to Zayat the text messages identified as being sent by him.

17. There is no evidence that either of the two phones on which these text messages have been preserved had been tampered with or that any message has been deleted or altered.

Dated: New York, New York
       May 4, 2015

BAINTONLYNCH LLP
By: _____
    J. Joseph Bainton (JB-5934)
*Attorneys for Plaintiff*
767 Third Avenue
New York, NY 10017-2079
Telephone: (212) 201-5705
e-mail: Bainton@baintonlynch.com

{00246961.DOCX; 2}