UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **HOWARD RUBINSKY,**<br><br>Plaintiff,<br><br>v.<br><br>**AHMED ZAYAT a/k/a EPHRAIM ZAYAT,**<br><br>Defendant. | Civ. No. 2:14-01540 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Howard Rubinsky brings this breach of contract and unjust enrichment action against Defendant Ahmed Zayat. Plaintiff alleges that Defendant owes him $1.65 million under a personal services contract. Specifically, Plaintiff claims that Defendant incurred a gambling loss on Plaintiff's line of credit at Tradewinds, a Costa Rica-based sports betting site, and that Defendant never repaid Plaintiff for that debt. Defendant moves for summary judgment under Federal Rule of Civil Procedure 56, arguing that Plaintiff's claims are time-barred. There was no oral argument. Fed. R. Civ. P. 78(b). For the below reasons, Defendant's motion is **GRANTED** and judgment is entered on Defendant's behalf.

**I.     BACKGROUND**

The following facts are undisputed. Plaintiff Howard Rubinsky is a Florida resident. D.'s R. 56.1 Stmt. ("D.'s Stmt.") ¶ 1; ECF No. 33. Defendant Ahmed Zayat is a New Jersey resident and a citizen of the United States and Egypt. D.'s Stmt. ¶ 3. Tradewinds is a Costa Rican-based sports betting site where bets are placed via the Internet and telephone.

Plaintiff previously made his living by acting as a matchmaker between gamblers and gambling sites such as Tradewinds. D.'s Stmt. ¶ 2. Plaintiff owned a "player list" of sports betters from all over the world, and provided the list to Tradewinds free of cost. Tradewinds, in turn, marketed its facility to these prospective gamblers. *Id.* ¶ 10. Tradewinds would then pay Plaintiff a commission of up to forty percent on the losses of individuals on his player list. *Id.*

The record is unclear as to whether Plaintiff's role as a gambling matchmaker also included maintaining a personal line of credit for certain gamblers. However, Plaintiff alleges that, in 2003, he arranged for Defendant to use his line of credit at Tradewinds. Declaration of Stephen Wagner ("Wagner Decl.") Ex. C ("Rubinsky Dep.") 52:1-7; 52:20-22; 55:1-7, ECF No. 30-7. Plaintiff admits that Defendant never asked him to put up a line of credit for him at Tradewinds. D.'s Stmt. ¶ 6. Plaintiff claims that Defendant lost over $2 million on Plaintiff's line of credit. Rubinsky Dep. 56:6-20. Plaintiff testified that Defendant paid back a portion of the loss. *Id.* 56:21-59:14. However, Plaintiff maintains that when Defendant stopped making payments, Tradewinds withheld the remaining $1.65 million owed from Plaintiff's commissions. *Id.* 79:14-80:14; 81:14-82:4.

In 2005, Plaintiff hired an attorney and an investigator to pursue recovery of the alleged debt from Defendant. D.'s Stmt. ¶ 11; Pl.'s Resp. to D.'s R. 56.1 Stmt. ("Pl.'s Resp. Stmt.") ¶ 11, ECF No. 33; Rubinsky Dep. 118:8-137:4; Wagner Decl. Ex. D, ECF No. 30-8. In 2008, the parties exchanged a number of text messages. Wagner Decl. Ex. M, ECF No. 30-17. For instance, on April 6, 2008, Plaintiff received the following series of text messages from Defendant:

> 9:30:09 a.m.: Good morning, Howie, feel better, take care of yourself . . . . I will meet your friends, give me their number and I will coordinate directly with them as my.
>
> 9:30:13 a.m.: Constantly changes my trip to Celveland, was not good, they got me more confused, one fucker hinks I have a rare form of cancer and they are all wrong,
>
> 9:30:18 a.m.: I will mail you checks evvery Friday, just give me an address, I will not postdate checks, why?? No reasons, I am not obliged to pay anything.
>
> 9:30:23 a.m.: Is just helping you out, don't own a soul anythings, God knows how much I helped everone, I am not responiable if your friends are crooks and robbed Y.
>
> 9:30:27 a.m.: Our money, I did my part and YOU KNOw that , , , I am more than generous, I love you and help you as a friend and a good decent Yidddish boy, good luck,
>
> 9:30:30 a.m.: So text me your friends contacts and I will call them sometime this week, and give an address every Thursday to Fed Exp, a heck for you, and I promised to.
>
> 9:30:33 a.m.: Help you in this mess.

2

*Id.* 13:20-15:5 (mistakes in original).

Plaintiff filed the instant action on March 11, 2014, alleging claims for breach of contract and unjust enrichment. He seeks to recover $1.65 million from Defendant.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides for summary judgment "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007). A defendant is entitled to summary judgment on statute of limitations grounds where there is no genuine dispute of material fact as to when the limitations period began to run, and based on that accrual date the defendant is entitled to judgment as a matter of law. *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 304 (3d Cir. 2004); *see also* Fed. R. Civ. P. 56(a).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.* The opposing party must do more than just rest upon mere allegations, general denials, or vague statements. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Rather, to withstand a proper motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256–57.

## III.    DISCUSSION

Plaintiff asserts claims for breach of contract and unjust enrichment against Defendant. Defendant argues that Plaintiff's claims accrued, at the latest, when Plaintiff hired an attorney and an investigator to recover the alleged debt in 2005. Accordingly, because Plaintiff did not file his Complaint until March 11, 2014, Defendant maintains that Plaintiff's claims are time-barred. In response, Plaintiff argues that this action actually arises from the exchange of text messages on April 6, 2008. Specifically, Plaintiff argues that those text messages constituted a written promise by Defendant to pay Plaintiff the $1.65 million allegedly owed. Plaintiff thus contends that his claims are timely.

The parties agree that New Jersey law applies to Plaintiff's claims. Under New Jersey law, a six-year state of limitations applies to breach of contract and unjust enrichment claims. N.J. Stat. Ann. § 2A:14-1. The clock begins to tick on the date that the cause of action accrues. *Id.* A breach of contract claim generally accrues when the defendant breached the contract. *Peck v. Donovan*, 565 F. App'x 66, 69 (3d Cir. 2012) (citing *Sodora v. Sodora*, 768 A.2d 840, 842 (N.J. Super. Ct. Ch. Div. 2000). An unjust enrichment claim accrues when the plaintiff last renders the services that form the basis of the plaintiff's claim. *See Baer v. Chase*, 392 F.3d 609, 622 (3d Cir. 2004) (citing *Rabinowitz v. Mass. Bonding & Insurance Co.*, 197 A. 44, 47 (N.J. 1938)).

In certain circumstances, the discovery rule will delay accrual "until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." *Peck*, 565 F. App'x at 70 (quoting *Lopez v. Swyer*, 300 A.2d 563, 565 (N.J. 1973). Because most contract actions rely upon the principal that the parties to the agreement know the terms of their contract and can detect a breach with reasonable diligence, the discovery rule generally does not apply to contract actions. *Morris v. Fauver*, 707 A.2d 958, 972 (N.J. 1998). Courts have also held that the discovery rule does not apply to unjust enrichment claims. *See, e.g., Baer*, 392 F.3d at 623.

The Court finds that Plaintiff's claims accrued, at the latest, in 2005 and will grant Defendant's motion. According to Plaintiff's own version of events, Plaintiff provided the line of credit at Tradewinds for Defendant – and Defendant allegedly lost over $2 million on that line of credit – in 2003. Rubinsky Dep. 52:1-7; 52:20-22; 55:1-7. Further, Plaintiff testified that by 2005, Defendant had stopped making any payments to Tradewinds and Plaintiff had paid for at least a portion of Defendant's debt through his commissions. *Id.* 78:01-79:13. And, in 2005, Plaintiff hired an attorney and an investigator to help him pursue the debt, because Defendant had not responded to him. *Id.* 78:01-79:13; 118:8-137:4; *see also* Wagner Decl. Ex. D. Thus, at the very latest, Plaintiff's claims accrued in 2005 – more than six years before Plaintiff filed the Complaint on March 14, 2011. Moreover, Plaintiff has not presented any evidence that would toll or restart the statute of limitations. The record contains no indication that Defendant actively misled Plaintiff regarding Plaintiff's claims or otherwise reasonably prevented Plaintiff from filing a timely complaint. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994); *Blystra v. Fiber Tech. Group, Inc.*, 407 F. Supp. 2d 636, 645 (D.N.J. 2005).

Perhaps recognizing the difficulty of surmounting Defendant's statute of limitations defense, in his opposition, Plaintiff amends his theory of the case. Specifically, Plaintiff argues that this action actually arises from Defendant's April 6, 2008 text messages, in which Defendant "promised in writing" to make weekly payments to Plaintiff. Pl.'s Am. Opp'n Br. 15, ECF No. 35. This argument fails because Plaintiff has produced no evidence from which a reasonable jury could conclude that

consideration existed for that alleged agreement. *See Starr v. Katz*, No. 91-3365, 1994 WL 548209, at *13 (D.N.J. Oct. 5, 1994) ("It is common sense as well as a common law rule that performance completed before a promise is made cannot be a bargained-for exchange for that promise."). Additionally, under New Jersey law, an acknowledgement or promise to pay a debt will only restart the statute of limitations if it is unconditional and in a signed writing. N.J. Stat. Ann. § 2A:14-24. Here, Defendant explicitly stated in his text messages that he does not owe Plaintiff – or anyone – any money, but that he would be willing to help Plaintiff. Rubinsky Dep. 137:6-144:25; Wagner Decl. Ex. M 14:7-18 (stating "I am not obliged to pay anything" and "don't own a soul anythings"). Accordingly, no reasonable jury could conclude that Defendant made an unconditional promise to pay the alleged debt.

### IV. CONCLUSION

For the above reasons, Defendant's motion for summary judgment is **GRANTED**. An appropriate order follows.

                /s/ William J. Martini
            **WILLIAM J. MARTINI, U.S.D.J.**

**Date: June 4, 2015**